# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RHONDA M. HOLLAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )     Case No. CIV-20-19-RAW-SPS |
| | ) |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** [1] | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Rhonda M. Hollan requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-three years old at the time of the administrative hearing (Tr. 31, 37).  She has a college education and has worked as an administrative services manager (Tr. 40, 68).  The claimant alleges that she has been unable to work since December 1, 2016, due to an infection behind her sinus cavity that caused a hole in her skull (Tr. 287).

## Procedural History

In November 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 252-62).  Her applications were denied.  ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 13, 2019 (Tr. 15-25).  The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with frequent reaching, handling, and fingering; occasional balancing, stooping, kneeling, crouching, or crawling; and never climbing ladders, ropes, or scaffolds (Tr. 20). As to environmental limitations, the ALJ found the claimant must avoid all exposure to unprotected heights and unprotected moving mechanical parts, and must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants (Tr. 20). Due to psychologically-based factors, the ALJ found the claimant could perform simple and some complex tasks with routine supervision, could frequently interact with supervisors, co-workers, and the general public, could respond appropriately to changes in a routine work setting, and that her time off task could be accommodated by normal work breaks (Tr. 20). The ALJ further found the claimant must alternate sitting and standing every twenty-to-thirty minutes throughout the workday for a brief positional change of less than five minutes without leaving the workstation (Tr. 20). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, cashier II, office helper, and small product assembler (Tr. 23-25).

**Review**

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the opinions of treating physicians Dr. Cedric Griffin and Dr. Carol Gambrill, (ii) account for her severe obesity, and (iii) pose a hypothetical to the vocational expert ("VE") that

-4-

included all her limitations. The undersigned Magistrate Judge agrees the ALJ erred in evaluating the opinions of Dr. Griffin and Dr. Gambrill, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of fibromyalgia, obesity, essential hypertension, chronic infections of skin or mucous membranes, depression, and bipolar disorder (Tr. 17). The relevant medical records reveal that providers at Stigler Health and Wellness treated the claimant for hypertension, depression, fibromyalgia, and/or sciatica from April 2016 through August 2018 (Tr. 418-524). The claimant's goal was to keep her blood pressure below 140/90, but physical examinations routinely reflected higher readings with notations that she was unable to afford her hypertension medications (Tr. 418-524).

The claimant received inpatient care for acute meningitis and sepsis at St. John Medical Center from May 7, 2017, until May 15, 2017 (Tr. 528-1059). She underwent right sinus surgery on May 10, 2017, to remove infected tissue and repair a cerebrospinal fluid leak which was believed to be the cause of her meningitis infection (Tr. 406-07, 585-86). Dr. Cordray's operative report indicates that dura filled the claimant's sphenoid cavity and that no further surgery was warranted (Tr. 407). A May 12, 2017, treatment notes indicates Dr. Cordray consulted with neurosurgery and noted "[W]e may not repair the herniation of brain/dura into the sphenoid sinus. Will need to follow up in the office in 1 to 2 weeks." (Tr. 954-56).

State agency physician Dr. Evette Budrich completed a physical RFC assessment on December 13, 2017, and concluded that the claimant could perform light work with

occasional balancing and climbing ramps or stairs, but never climbing ladders, ropes, or scaffolds (Tr. 114-16). Dr. Budrich explained that these limitations were necessary due to the claimant's reported intermittent dizziness and balance issues (Tr. 115). She further explained that her RFC assessment applied prior to May 7, 2017, and after May 14, 2018 (Tr. 116). Dr. Budrich's findings were affirmed on review (Tr. 145-48).

     The claimant presented to Dr. Griffin on September 4, 2018, for elevated blood pressure, care guidelines, and to get disability paperwork signed (Tr. 1133). After taking an initial and repeat reading of the claimant's blood pressure, Dr. Griffin diagnosed her with hypertensive urgency and referred her for emergent care (Tr. 1138). A chest x-ray performed that day revealed no evidence of active cardiopulmonary disease (Tr. 1123). An echocardiogram performed the following day revealed a normal ejection fraction, an "early" diastolic abnormality, left ventricular hypertrophy, and a left atrium at the upper limits of normal for size (Tr. 1113-14). A brain CT indicated mild supratentorial white matter disease most likely due to chronic microangiopathy but no acute intracranial findings (Tr. 1124). The claimant was successfully treated with medication and discharged on September 6, 2018 (Tr. 1119-1120). At a follow-up appointment with Dr. Griffin on October 10, 2018, the claimant reported normal blood pressure readings and that she had been taking care of her grandchildren (Tr. 1140-46). On physical exam, Dr. Griffin noted the presence of a limp, tenderness in the claimant's lumbar spine, mildly impaired short term and remote memory, and loss of balance (Tr. 1144). He assessed the claimant with balance disturbance due to old head injury, unspecified injury of the head, sequela, mild memory disturbance due to organic brain damage, and a BMI of 45-49.9 (Tr. 1145).

Dr. Griffin also completed a physical RFC evaluation on October 10, 2018, wherein he opined, *inter alia*, that the claimant could lift/carry up to ten pounds occasionally, could sit up to thirty minutes for a total of three hours, stand up to thirty minutes for a total of one hour, and walk up to thirty minutes for a total of two hours (Tr. 1127-29). As to postural limitations, Dr. Griffin stated the claimant could occasionally bend and crawl but could never squat or climb (Tr. 1128). Dr. Griffin also indicated the claimant was limited in the use of her hands (Tr. 1128). As to environmental conditions, Dr. Griffin found the claimant was totally restricted in her ability to work at unprotected heights, around moving machinery, and be exposed to dust, fumes, and gases (Tr. 1128). He concluded that the claimant was unable to work on a sustained and continuing basis due to weakness and balance issues (Tr. 1128). As objective support for his opinions, Dr. Griffin noted the claimant's myalgias, myositis, and history of brain surgery with frontal sinus infection (Tr. 1130). The following week, Dr. Gambrill completed a Medical Source Statement wherein she indicated that the claimant could sit/stand/walk and lift less than one hour each and had "low functionality" due to frontal sinus erosion with cerebrospinal fluid leakage (Tr. 1132).

In his written opinion, the ALJ summarized the claimant's testimony and the medical record. In discussing the opinion evidence, the ALJ gave Dr. Griffin's opinion partial weight, noting the issue of whether the claimant is unable to work is reserved to the Commissioner, and finding his opinion inconsistent with the longitudinal medical evidence (Tr. 22-23). He gave Dr. Gambrill's opinion little weight because there was no supporting medical documentation and again noted that the issue of whether the claimant is unable to

work is reserved to the Commissioner (Tr. 23). The ALJ then gave the state agency physicians' opinions partial weight and determined the claimant needed further limitations due to her physical impairments (Tr. 23).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were

considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

In this case, the ALJ made the conclusory determination that Dr. Griffin's opinion was "not consistent with the longitudinal medical evidence" and in doing so, failed to compare his opinion with "the evidence from other medical sources and nonmedical sources in the claim" as required by 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(2), 416.920c(b)(2), 416.920c (c)(2). *See Swineheart v. Saul,* 2020 WL 6878356, at *5 (W.D. Okla. Nov. 23, 2020) ("[T]he ALJ completely failed to discuss the 'consistency' of Dr. Rouse's opinion with other medical opinions. Instead, at step four, the ALJ only stated that Dr. Rouse's opinion was 'not . . . consistent with the evidence . . . or . . . [a] disability.' But the ALJ did not compare Dr. Rouse's opinion with 'the evidence from other medical sources and nonmedical sources in the claim,' as he was required to do."), *citing* 20 C.F.R. [404 §] § 1520c(b)(2), (c)(2). Similarly, the ALJ did not mention or discuss the consistency of Dr. Gambrill's opinion nor the supportability of Dr. Griffin's opinion. Because the ALJ must explain how he considered the two "most important factors" of supportability and consistency in determining the persuasiveness of any medical opinion, this was clearly error. *See* 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(2), 416.920c(b)(2), 416.920c(c)(2). Furthermore, the ALJ adopted Dr. Griffin's findings as to the claimant's ability to stoop and crawl, as well as his environmental limitations, but rejected without explanation his limitations regarding the claimant's ability to lift, carry, sit, stand, walk, climb, use her hands, and concentrate (Tr. 890-91). It was also error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004)

(noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). In addition to evaluating Dr. Griffin's and Dr. Gambrill's findings according to the appropriate standards, the ALJ should have explained why he found certain aspects of Dr. Griffin's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the

-11-

case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

    **DATED** this 20th day of January, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**